## 1399, 1411. YANCEY *v.* WARNER ELEVATOR MANUFACTURING COMPANY, and *vice versa.*

The evidence demanded the verdict as directed.

Complaint, from city court of Floyd county—Judge Hamilton. August 10, 1908.

Argued November 25, 1908.—Decided May 4, 1909.

*J. Branham, John W. & G. E. Maddox,* for plaintiff in error.
*Denny & Harris,* contra.

HILL, C. J. The Warner Elevator Manufacturing Company sued Hamilton Yancey for the price of an elevator which it had contracted to install and did install in the defendant's storehouse in Rome, Georgia. A verdict was directed for the plaintiff; and the defendant's motion for a new trial, based on the general grounds and on alleged error in directing the verdict, was overruled. The contract for the elevator provided that the plaintiff was to erect in the defendant's building in Rome, "in a complete, workmanlike, and substantial manner," one of its "latest improved, direct-acting, hydraulic passenger elevators," and the contract described specifically the constituent parts of the elevator, its size, finish, and material, and expressly warranted in every respect the elevator as described. The defendant filed a plea setting up a total failure of consideration, in that the plaintiff had failed to comply with its contract to install in his building in a complete, workmanlike, and substantial manner the elevator described in the contract. He avers, that the elevator described in the contract was a passenger elevator, but that the elevator put in by the plaintiff, under the most favorable circumstances, with the water pressure called for by the contract, required seventeen seconds to ascend from the first to the second floor of the building, a distance of 14 feet and 3 inches, and that a passenger elevator, such as de-

scribed in the contract, would reasonably ascend the distance named in not exceeding five seconds of time, and that in this respect the elevator installed by the plaintiff failed to meet the description of the passenger elevator which the plaintiff expressly warranted in the contract to furnish to defendant. He sets up other defects in the elevator which he claims constituted breaches of the express warranty of the contract. These defects are shown by the evidence to have been immaterial, not in any manner affecting the speed of the elevator, and in fact are shown to have been remedied by the plaintiff. The entire defense is embraced in the averment made by the defendant that the plaintiff was to install a certain described passenger elevator, when in fact it did not install a passenger elevator such as was described in the contract, but instead an elevator which was entirely worthless for passenger service because of insufficient speed. It is admitted that the contract was one of express warranty, specifically designating "one of our latest improved, direct-acting, hydraulic passenger elevators," which, as to "capacity and travel," expressly warranted that the "platform will travel from first to second [story], a distance of about fourteen feet and three inches, and lift a load of 1200 pounds, exclusive of platform, with a water pressure of 80 pounds to the square inch at the operating valve." The contract further provided that the owner of the building was to supply the necessary water pressure for the operation of the elevator. There is nothing in the contract on the subject of speed.

It being conceded that the contract is one of express warranty, any implied warranty as to rate of speed must be excluded. It is claimed, however, by the defendant that a passenger elevator such as described in the contract, under the water pressure described, would ascend from the first to the second floor, a distance described, in about five seconds. Conceding this to be as claimed by the defendant, the burden would be on him to show that this elevator, with a water pressure of eighty pounds to the square inch at the operating valve, would not make the speed required for a passenger elevator. Now, the speed of an hydraulic elevator obviously depends upon the amount of the water pressure at the operating valve, and the defendant was to supply this water pressure. His own evidence conclusively shows that he never did supply a sufficient quantity of water to produce a pressure of eighty

pounds to the square inch at the operating valve, but that the water pressure did not at any time exceed the amount of 46 pounds to the square inch at the operating valve. It was admitted that even with this amount of pressure the elevator would ascend from the first floor to the second with any load placed on it, the amount of the load making no difference in the speed with which it would ascend, but that under this pressure it had not obtained a greater rate of speed than ten seconds from the first to the second floor. The conclusion is inevitable that the failure of the elevator on the question of speed was due, not to any defect in the elevator itself, but solely to insufficient water pressure, and that this insufficiency of water pressure was due entirely to the failure of the defendant to supply the amount of pressure designated by the contract. It would be as reasonable to claim that an engine was defective because it did not run when no water was in the boiler to generate the steam, as to claim that an hydraulic elevator was defective because it did not have speed when there was no water pressure sufficient in volume to make speed. The contract showed, and the evidence is without conflict on this point, that the defendant and not the plaintiff was to furnish the water with which to make the speed, and it is obvious that every pound of water pressure would add to the speed of the elevator; and if, in the present case, a pressure of 46 pounds made this elevator rise from the first to the second floor in seventeen seconds, with a pressure increased to eighty pounds, which is the amount designated in the contract, the rate of speed at which it would ascend would be proportionately increased, and this matter was wholly under the control of the defendant.

We think that the evidence in this case conclusively shows, that the plaintiff complied with its contract in every respect; that it did install for the defendant the passenger elevator specifically described in the contract; that the defects alleged in the plea were immaterial variations which did not affect the value of the elevator; and that the failure of the elevator to make the rate of speed desired by the defendant, and claimed by him to be the usual and customary speed of passenger elevators, was not caused by any defects in the elevator itself, but was due entirely to the failure of the defendant to supply the requisite water pressure which the contract made it his duty to supply.

The undisputed evidence shows that the elevator was accepted by the defendant, and, after installation, was used by his tenant from four to five months in the regular business of conducting passengers and freight from the first to the second floor of the storehouse, and that the only complaint in connection with the elevator was its lack of speed when only a water pressure nearly one half less than that required by the contract was supplied by the defendant. Certainly it can not be said, under this evidence, that a plea of total failure of consideration was sustained; and while the plea of total failure of consideration includes any partial failure of consideration, there is no evidence of any reduction in the value of the elevator on account of the defects claimed. The evidence, in our judgment, demanded the verdict directed by the court.

*Judgment affirmed. Cross-bill of exceptions dismissed.*